# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) 02:08-cr-0094 |
| | ) |
| JAYMAR A. GILBERT | ) |

## MEMORANDUM OPINION AND ORDER OF COURT

July 2, 2009

Currently before the Court is the MOTION TO SUPPRESS EVIDENCE filed by Defendant, Jaymar A. Gilbert (*Document No. 41*).

On April 21, 2009, the Court conducted an evidentiary hearing on the suppression motion at which all parties were represented by counsel who presented and argued the issues skillfully and effectively. Officer Joshua Whaley, Officer Dave Lang, Lieutenant Kevin Kraus (all with the City of Pittsburgh Police Department) and F.B.I. Special Agent Kelley Hoover testified on behalf of the government. Heather Gill and Richard Villa testified on behalf of the Defendant.

At the conclusion of the suppression hearing, the Court ordered that the record would remain open until May 21, 2009, so that defense counsel, if so desired, could file a post-hearing brief, with the government's response due on or before June 4, 2009. Counsel for defendant requested a one-day extension of time in which to file his post-hearing brief, which request was granted. The post-hearing briefs were timely filed after the extension and the matter is now ripe for disposition.

Based on the testimony and evidence presented at the suppression hearing and the applicable law, the Court enters the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Criminal Procedure 12(d):

**FINDINGS OF FACT**

The facts surrounding this traffic stop and subsequent inventory search on October 14, 2007, are basically not contested. On October 14, 2007, Officer Dave Lang and his partner, Officer Joshua Whaley, were on patrol in their marked police vehicle in the Northside area of Pittsburgh. At approximately 4:14 P.M., they observed a blue Mercury Sable with PA license plate GRC 1379 traveling outbound in front of them on Brighton Road. Officer Whaley determined, through the Pennsylvania Department of Transportation ("PennDOT") computer system that the vehicle's registration had been suspended due to a returned check. *See* Govt Ex. 1. As a result, the officers initiated a "general" traffic stop. The driver of the vehicle, later identified as the Defendant, pulled the Mercury Sable over about three (3) feet from the curb. Officer Lang testified that the vehicle was stopped in an unsafe location and would not have been considered to have been legally parked.

Officer Lang approached the Defendant and asked for his license, registration, and proof of insurance, which Defendant provided. There were two passengers in the car: Delano Brown, sitting in the front seat, and Charles Chaney, sitting in the rear back seat, on the driver's side of the vehicle. Officer Lang told the Defendant that the car registration was suspended and asked the Defendant to get out of the car. Once the Defendant was out of the car, Officer Lang asked him if he had "anything on him." Defendant replied that he had "a little weed in his

pocket." Officer Lang proceeded to retrieve the marijuana and placed Defendant in handcuffs and arrested him for possession of marijuana.

Both passengers agreed to a search of their persons, which was conducted by Officer Whaley, and both searches were negative for contraband.

Officer Whaley determined that under Pennsylvania law the Mercury Sable needed to be towed because (i) the driver was being arrested, (ii) the vehicle had a suspended registration and (iii) it was blocking the roadway.[1] According to the "Towing and Tow Pound Procedures" of the Pittsburgh Bureau of Police, the vehicle of an arrested person "shall NOT be towed unless: [t]he vehicle presents a traffic hazard and cannot be driven away." Govt Ex 2, ¶ 5.1.1. Further, the Pennsylvania Vehicle Code specifically provides as follows:

> If a motor vehicle or combination for which there is no valid registration or for which the registration is suspended, as verified by an appropriate law enforcement officer, is operated on a highway or trafficway of this Commonwealth, the law enforcement officer shall immobilize the motor vehicle or combination or, <u>in the interest of public safety, direct that the vehicle be towed</u> and stored by the appropriate towing and storage agent . . . .

Govt Ex. 5, 75 Pa.C.S.A. § 6309.2(a)(2) (emphasis added).

Officer Whaley commenced an inventory of the vehicle before it was to be towed. During the inventory search, Officer Whaley found a .38 Smith & Wesson firearm in the glove box. At that point, the inventory search was stopped.[2]

---

[1] Both Officer Lang and Lieutenant Kraus testified similarly that when a vehicle has a revoked and/or suspended registration, the police have no discretion but to tow the vehicle. Lieutenant Kraus testified that it was the policy of the City of Pittsburgh Police Department to tow cars with expired registrations.

[2] A search was resumed later after Defendant gave his permission for the police to
(continued...)

3

At approximately the same time that Officer Whaley found the firearm in the glove box, Lieutenant Kraus arrived on the scene. Lieutenant Kraus and Officer Lang approached the Defendant and Lieutenant Kraus told Defendant that he wanted to talk to him about the firearm found in the glove box. Lieutenant Kraus proceeded to orally give Defendant his Miranda rights, and the Defendant informed the officers that he was willing to talk about the firearm without an attorney being present. The Defendant voluntarily told Lieutenant Kraus and Officer Lang that the firearm in the glove box was his and that he had purchased it approximately one month earlier.

Heather Gill, the girlfriend of the Defendant, testified that the police called and informed her that the Defendant was being arrested. Ms. Gill and her friend came to the scene and asked the police if they could take the vehicle. Her friend had a valid driver's license and she would have been the person who would drive the vehicle home; at the time, Ms. Gill was unable to drive as she only had a driving learner's permit. The police refused her request as the vehicle registration was suspended.

Ms. Gill testified that the police were mistaken in their belief that the vehicle's registration was suspended. During the hearing, Ms. Gill testified that the vehicle registration had been suspended, but should have been reinstated as she had paid the registration fee, although late.[3] Ms. Gill testified that, prior to Defendant's arrest, she had spoken with a

---

[2](...continued)
search his vehicle, which negated the necessity for a search warrant. During the resumed search, a small amount of marijuana was found on the back seat of the vehicle.

[3] The record from PennDOT reflects that Defendant was notified on 8/07/07 that his
(continued...)

representative of PennDOT who told her that if she paid the registration fee, the registration would be reinstated. PennDOT did not send her a confirmation of the reinstatement as the representative informed her that with proper payment the registration would be restored. Ms. Gill sent in the registration payment; however, she inadvertently submitted an overpayment.[4] Def's Exhibit H1, an "A/R Inquiry Detail" dated February 14, 2008, issued by PennDOT, contains the following handwritten notation written by a representative of PennDOT: "The case should've been closed 9-27-07 with the stop removed. Overpayment caused case to remain open & stop to remain. This is a PennDOT error."

On October 14, 2007, the Defendant was charged in the Court of Common Pleas of Allegheny County, Criminal Division, with the following crimes: possession of a firearm; firearms not to be carried without a license; intentional possession of contraband; vehicle registration suspended; and possession of marijuana.

On February 26, 2008, a federal Grand Jury returned a one-count Indictment which charged Defendant with Possession of a Firearm by a Convicted Felon on or about October 14, 2007, in violation of Title 18, United States Code, section 922(g)(1).

---

[3](...continued)
registration was suspended; that a "stop" was placed on the vehicle on 9/15/07; and that the "stop" was removed on 10/15/07, the day after the arrest. *See* Def's Exh. H-1.

[4] The amounted needed to be paid to reinstate the registration was $577.05 ($537.05 plus a penalty of $40.00); however, Ms. Gill overpaid by ninety-five cents ($0.95), when she paid $578.00, which unexplainedly caused the case to remain open (five payments were made: 8/30/07 - $100.00; 9/10/07 - $100; 9/14/07 - $100; 9/21/07 - $100; and 9/27/07 - $178). See Def's Exh. H-2.

5

On February 27, 2008, Special Agent Kelley Hoover, along with City of Pittsburgh Police Officer Biblebicz, arrested Defendant at a residence located at 530 California Avenue, Bellevue, Pennsylvania, for the federal crime of Possession of a Firearm by a Convicted Felon. At the time of his arrest, Defendant had on his person identification, a cell phone, money, and baggies of marijuana. His girlfriend was present at the time of his arrest.

Special Agent Hoover and Officer Biblebicz transported Defendant to the Alcohol, Tobacco and Firearms ("ATF") Pittsburgh office, where Defendant was put in an interview room. Special Agent Hoover read Defendant his Miranda rights from a card and Defendant informed her that he was willing to talk without an attorney being present. Defendant signed and printed his name on an ATF Form 3200.4, Statement of Rights and Waiver of Miranda rights. Special Agent Hoover talked briefly to Defendant about where he had obtained the firearm that was found in his glove box during the inventory search on October 14, 2007.

Defendant filed the instant motion in which he argues that there was no objectively reasonable basis for the traffic stop as the vehicle registration was not in fact suspended on October 14, 2007. Alternatively, Defendant argues that if there was a valid reason for the traffic stop, the decision of the police to remove the Defendant from the vehicle was an unlawful seizure and the decision to tow the car was unreasonable under the Fourth Amendment because it was not based on objective criteria.

## CONCLUSIONS OF LAW

The Fourth Amendment of the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated,

and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

*U.S. Const. amend. IV*.

The United States Supreme Court has held that, consistent with the Fourth Amendment, police officers may make a warrantless inventory search of a properly seized vehicle. *South Dakota v. Opperman*, 428 U.S. 364 (1976). Such searches must, however, be "conducted according to standardized criteria or established routine." *Colorado v. Bertine*, 479 U.S. 367, 374 n.6 (1987).

The appropriateness of the inventory search conducted by Officer Whaley is not at issue; rather, Defendant limits his argument to four issues: (i) the reasonableness of the warrantless stop of the vehicle being driven by Defendant; (ii) the reasonableness of the decision to remove Defendant from his vehicle; (iii) the reasonableness of the decision to tow the vehicle; and (iv) the validity of Defendant's statements made to Special Agent Hoover after his federal arrest on February 27, 2008. The issues will be addressed seriatim.

### A. Decision for Traffic Stop was Reasonable

Generally, police officers are expected to stop vehicles, and are justified in stopping vehicles, on reasonable suspicion that the driver or the vehicle are in violation of traffic laws. *See, e.g., United States v. Toney,* 124 Fed. Appx. 713, 715 (3d Cir. 2005) ("Toney was operating a vehicle with an invalid license plate. Because of this traffic violation, Office Devine was justified in making the initial stop."), *citing Whren v. United States*, 517 U.S. 806, 810 (1996) ("the decision to stop an automobile is reasonable where the police have probable

cause to believe that a traffic violation has occurred"); *Delaware v. Prouse*, 440 U.S. 648, 663 (1979) (holding that traffic stops are justified under the Fourth Amendment where the officer has a reasonable suspicion that either the motorist or the vehicle are in violation of the law); and 75 Pa.C.S. § 6308(b) (authorizing police officers to conduct a traffic stop where there is a reasonable suspicion of a traffic code violation).

In *United States v. Johnson*, 63 F.3d 242 (3d Cir. 1995), the United States Court of Appeals for the Third Circuit provided guidance for the reasonableness of a traffic stop for a suspected motor vehicle code violation:

> The United States Supreme Court has held that stopping a car and detaining its occupants is a seizure under the Fourth Amendment. See *United States v. Hensley*, 469 U.S. 221, 226 (1985). . . . However, a stop to check a driver's license and registration is constitutional when it is based on an "articulable and reasonable suspicion that . . . either the vehicle or an occupant" has violated the law. *Delaware v. Prouse*, 440 U.S. 648, 663 (1979) . . . ; *see also* 75 Pa. Cons. Stat. Ann. § 6308(b). . . .
>
> As a general rule, the burden of proof is on the defendant who seeks to suppress evidence. . . . However, once the defendant has established a basis for his motion, i.e., the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable. . . .
>
> [T]o justify the traffic stop under *Prouse*, [the officer is required to demonstrate] an articulable and reasonable suspicion that the car was in violation of Pennsylvania law. *See, e.g., Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977). . . .

*Johnson*, 63 F.3d at 246.

More recently, the Court of Appeals for the Third Circuit reinforced the principle that a police officer need only articulate reasonable suspicion, not probable cause, that the driver or the car is violating motor vehicle laws in order to justify a traffic stop. *United States v. Delfin-Colina*, 464 F.3d 392, 396-97 (3d Cir. 2006). Additionally, the appellate court in

8

*Delfin-Colina* considered the effect of an officer's mistake of fact or mistake of law with regard to the validity of the traffic stop, stating as follows:

> Though reasonable suspicion is a generally undemanding standard, a police officer does have the initial burden of providing the "specific, articulable facts" to justify a reasonable suspicion to believe that an individual has violated the traffic laws. . . . And a reviewing court must consider whether the "rational interferences from those facts reasonably warrant [the] intrusion." *Terry*, 392 U.S. at 21. Ultimately, our mandate is to weigh "the totality of the circumstances-the whole picture." . . .
>
> The *Whren* Court explained that a court should undertake an objective review of the officer's rationale for the investigatory traffic stop. 517 U.S. at 806. That is, a court should only look to whether specific, articulable facts produced by the officer would support reasonable suspicion of a traffic infraction. . . . The Court explained that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis," and that "we have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers." *Id.* at 813. . . .
>
> Taken together, then, *Terry* and *Whren* stand for the proposition that a traffic stop will be deemed a reasonable "seizure" when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop. In other words, an officer need not be factually accurate in her belief that a traffic law had been violated but, instead, need only produce facts establishing that she reasonably believed that a violation had taken place. Consequently, a reasonable mistake of fact "does not violate the Fourth Amendment." . . . ; *see also Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990) (noting that factual determinations made by government agents need not "always be correct," but they always have to be "reasonable"). . . .

*Delfin-Colina*, 464 F.3d at 397-98.

In *Delfin-Colina*, the Pennsylvania State Trooper had mistakenly believed that the Pennsylvania Motor Vehicle Code, 75 Pa.C.S. § 101 *et seq*., prohibits driving a vehicle with any object hanging from the windshield rear view mirror. In fact, the Motor Vehicle Code provides that a motor vehicle may not be driven "with any object or material hung from the

9

inside rearview mirror or otherwise hung, placed or attached <u>in such a position as to materially obstruct, obscure or impair the driver's vision</u> through the front windshield or any manner as to constitute a safety hazard." 75 Pa.C.S. § 4524(c) (emphasis added). Although the trooper was mistaken as to the law, he actually believed, when he pulled Mr. Delfin-Colina over, that the crucifix hanging from the windshield mirror was a low-hanging item that might either obstruct or otherwise impair the driver's vision because of its potential to swing back and forth. Thus, the Court of Appeals for the Third Circuit held that although the trooper "made a significant mistake of law . . . an objective review of the facts shows that an officer who correctly interpreted § 4524(c) and was in Trooper Wagner's position would have possessed reasonable suspicion to believe that *Delfin-Colina* was in violation of § 4524(c). Because it is this objective analysis that is controlling under *Whren*, Trooper Wagner's mistake of law did not render the traffic stop unconstitutional." *Id.* at 400-01.

Local police officers are authorized to enforce the Pennsylvania Motor Vehicle Code and investigate possible violations thereof as follows:

> 6308. Investigation by police officers.
> \* \* \*
> (b) Authority of police officer.-Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa. C. S. § 6308.

Furthermore, the Pennsylvania Vehicle Code specifically provides as follows:

> If a motor vehicle or combination for which there is no valid registration or for which the registration is suspended, as verified by an appropriate law enforcement officer, is operated on a highway or trafficway of this Commonwealth, the law enforcement officer shall immobilize the motor vehicle or combination or, in the interest of public safety, direct that the vehicle be towed and stored by the appropriate towing and storage agent . . . .

Govt Ex. 5, 75 Pa.C.S.A. § 6309.2(a)(2).

Officers Lang and Whaley testified to specific, articulable facts that supported a reasonable suspicion that the Defendant or the Mercury Sable were in violation of traffic laws, namely, violation of § 6309.2(a)(2), which requires a valid registration on all motor vehicles. Specifically, the computer report generated by the Pennsylvania Bureau of Motor Vehicles reflected that the registration on the Mercury Sable, PA License No. GRC 1379, was suspended. An objective review of the facts reveals that the Pennsylvania Bureau of Motor Vehicles report presented Officers Lang and Whaley with reasonable suspicion, despite any mistake of fact. Accordingly, the Court finds and rules that, based on the computer generated report prepared by the Pennsylvania Bureau of Motor Vehicles, Officers Lang and Whaley had a reasonable and articulable suspicion that the vehicle (Mercury Sable) or driver (the Defendant) was in violation of the Pennsylvania Vehicle Code and, therefore, the traffic stop on October 14, 2007 was lawful.

### B. Decision to Remove Defendant from Vehicle was Reasonable

In *Pennsylvania v. Mimms,* 434 U.S. 101, 111 n. 6 (1977), the United States Supreme Court held that "once a motor vehicle has been lawfully detained for a traffic violation, the

police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." The government's "legitimate and weighty" interest in officer safety, the Supreme Court said, outweighs the "de minimis" additional intrusion of requiring a driver, already lawfully stopped, to exit the vehicle. *Id..* at 110-111. See also *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004) ("A police officer who observes a violation of state traffic laws may lawfully stop the car committing the violation. *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977). It is also well settled that a police officer executing such a stop may exercise reasonable superintendence over the car and its passengers. Under *Mimms,* the officer may order the driver out of the vehicle without any particularized suspicion.").

The Court has previously found that the traffic stop was lawful. Likewise, the Court finds and rules that the decision of Officer Lang to have the Defendant get out of the vehicle, already lawfully stopped, was reasonable and lawful.

### C. Decision to Tow Vehicle was Reasonable

There was considerable evidence at the suppression hearing explaining the decision of the police officers to have Defendant's vehicle towed. Officers Lang and Whaley, as well as Lieutenant Kraus, each testified that they believed the police had no discretion but to tow a car when a vehicle registration is suspended.

In rebuttal, Defendant has filed a supplemental motion, in which attached are prior citations received by Defendant - one on June 16, 2006 for permitting someone to drive his car

with an illegal plate or car (registration) and the other on September 23, 2007, for operating a vehicle with suspended registration. Defendant argues that these exhibits demonstrate that "police **do** exercise discretion to release a person and let him drive his car home to fix whatever registration or license plate illegalities exist." Supp. at 2 (emphasis in original).

Defendant argues that "[i]n light of the prior times the police did **not** immobilize Mr. Gilbert's cars despite an invalid registration, and in light of the presence of the two women who were perfectly capable of moving the car, either to Mr. Gilbert's home, or, even simpler, three feet to the right, and in light of the statute's clear preference for a 24-hour period in which to fix the registration problems (which in this case would have revealed that, in fact, Mr. Gilbert's car **was** validly registered), it is submitted that the police decision to tow the car was unreasonable and arbitrary, in violation of the Fourth Amendment." Supp. at 3 (emphasis in original).

The Court finds, however, that these citations do not require the suppression of the evidence in this case. At most, the citations reflect that perhaps some Pittsburgh police officers are either not aware of or do not follow the standard Pittsburgh Police Operating Procedures.

While the officers who testified at the hearing all stated that they had no discretion in deciding whether to tow Defendant's vehicle, assuming arguendo that the officers did in fact have such discretion, nothing in *Opperman* or *Ilinois v. Lafayette*, 462 U.S. 640 (1983), prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity. The record is completely void of any evidence to show that the police chose to tow Defendant's vehicle in order to investigate suspected criminal activity.

Rather, Officers Lang and Whaley both testified that the car was parked three (3) feet away from the curb, which presented a traffic hazard. Section § 6309.2(a) provides that a "law enforcement officer shall immobilize the motor vehicle or combination or, <u>in the interest of public safety, direct that the vehicle be towed</u> and stored by the appropriate towing and storage agent . . . ." 75 Pa.C.S.A. § 6309.2(a)(2).

In *Commonwealth v. Henley*, the Pennsylvania Superior Court indicated that the police may impound and tow an unregistered, uninsured vehicle pursuant to their care-taking functions. "Judges are not in a position to second-guess a police officer's decision to tow a vehicle which, in the officer's opinion, may create a traffic hazard. To do so would seriously handicap legitimate traffic-control activities." *Com. v. Henley,* 909 A.2d 352 (Pa. Super. Ct. 2006) (citing *United States v. Abbott,* 584 F. Supp. 442, 448 (W.D. Pa.), *affirmed,* 749 F.2d 28 (3rd Cir. 1984)).

Accordingly, the Court finds and rules that the decision of the police officers to have the car towed was reasonable in the circumstances which confronted them.

### D. <u>Statements Made to Special Agent Hoover</u>

Defendant, relying upon the Supreme Court decision in *Michigan v. Jackson,* 475 U.S. 625, 626 (1986), argues that his statements to Special Agent Hoover should be suppressed as "it is a violation of his Sixth Amendment for the government to interrogate him about the offense after he has been charged with that offense in state court and remains in custody on that charge." *Id.* at 4. The Court initially notes that on May 26, 2009, after the filing of

Defendant's supplemental brief, the rule of *Michigan v. Jackson*[5] was overruled by the Supreme Court in *Montejo v. Louisiana*, -- U.S. ---, 129 S.C. 1079 (May 26, 2009).

In *Montejo*, the Supreme Court concluded that *Jackson* merely added a layer of complexity to analyzing the admissibility of confessions while providing only redundant protections. The issue, the Court noted, is whether courts should presume that defendants who already have counsel cannot voluntarily waive their Sixth Amendment rights in subsequent-police initiated interrogations. Concluding that they should not, the Supreme Court stated that the underlying justification for the *Jackson* rule was the need to prevent police from "badgering" represented suspects to relinquish their right to have counsel present during questioning.

First, it is important to note that Special Agent Hoover and City of Pittsburgh Police Officer Biblebicz arrested Defendant on February 27, 2008, on the federal charge of Possession of a Firearm by a Convicted Felon. Although he was represented on the state charges, which arose out of the same incident, his right to counsel had not yet attached with respect to the federal charge. Therefore, his Sixth Amendment right was not violated.

Moreover, it cannot be overlooked that at the time of his federal arrest, Special Agent Hoover advised Defendant of his Miranda rights and Defendant knowingly and voluntarily waived them.

---

[5] The Rule of *Michigan v. Jackson* required the exclusion of statements made by a suspect during a counselless interview initiated by police after the suspect invoked his Sixth Amendment right to counsel at an arraignment or similar proceeding.

15

Accordingly, the Court finds Defendant's arguments to be without merit and Defendant's statements to Special Agent Hoover will not be suppressed.

**CONCLUSION**

For the reasons hereinabove stated, the Motion to Suppress filed by Defendant will be denied.[6] An appropriate Order follows.

McVerry, J.

---

[6] The Court finds that the recent decision of the United States Supreme Court in *Arizona v. Gant* does not undermine the disposition of the suppression issue. See *Arizona v. Gant*, 129 S. Ct. 1710 (2009). In *Gant*, the Supreme Court concluded that "circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Id.* at 1714. Gant had been arrested for driving with a suspended license, and placed in the back of a patrol car - all before the officers searched his vehicle and found cocaine in a jacket in the back seat. *Id.* In those circumstances, the Court deemed the warrantless search of Gant's vehicle as inappropriate, because the authorities "could not reasonably have believed" that evidence of the offense for which Gant was arrested might be found in his car. *Id.* at 1719. The instant case is readily distinguishable, however, because the firearm was found in the glove compartment incident to a required inventory search prior to the vehicle being towed; it was not found incident to his arrest for possession of marijuana.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | 02:08-cr-0094 |
| | ) | |
| JAYMAR A. GILBERT | ) | |

**ORDER**

AND NOW, this 2nd day of July, 2009, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

    (i)    the Motion to Suppress Physical Evidence filed by Defendant is **DENIED**;

and

    (ii)    the Motion to Suppress Statements filed by Defendant is **DENIED.**


A pretrial conference is scheduled in this matter on **Thursday, July 9, 2009 at 1:00 P.M.**

                                                    BY THE COURT:

                                                    s/Terrence F. McVerry
                                                    United States District Court Judge

cc:       Constance M. Bowden,
          Assistant U.S. Attorney
          Email: constance.bowden@usdoj.gov


          W. Penn Hackney,
          Assistant Federal Public Defender
          Email: penn_hackney@fd.org